IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 9, 2012

## STATE OF TENNESSEE v. JOSEPH ALFONSO SIGALA

**Appeal from the Circuit Court for Williamson County**
**No. CR125356      Timothy L. Easter, Judge**

---

**No. M2011-02517-CCA-R3-CD - Filed July 16, 2012**

---

Joseph Alfonso Sigala ("the Defendant") pleaded guilty to two counts of aggravated burglary and two counts of theft between $1,000 and $10,000, but the plea left open the issue of sentencing. Following a sentencing hearing, the trial court ordered the Defendant to serve an effective five-and-a-half-year sentence in confinement. The Defendant appeals, arguing that the trial court erred by: (1) admitting the Defendant's social networking web page as an exhibit; (2) denying judicial diversion; (3) improperly applying the statutory enhancing and mitigating factors; (4) finding that the Defendant lacked credibility; and (5) denying the Defendant probation. Upon a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Venus Niner, Franklin, Tennessee, for the appellant, Joseph Alfonso Sigala.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel Harmon, Assistant Attorney General; Kim Helper, District Attorney General, for the appellee, State of Tennessee.

## OPINION

Factual and Procedural Background

The Defendant was indicted on two counts of aggravated burglary, two counts of theft over $1,000 but under $10,000, and one count of vandalism over $1,000 but under $10,000. On September 7, 2011, he entered an open plea to the two counts of aggravated burglary, a

Class C felony, and the two counts of theft over $1,000 but under $10,000, a Class D felony. The indicted count of vandalism over $1,000 was dismissed.

The trial court accepted the guilty plea. The guilty plea did not contain any agreement with the State as to sentencing. However, as part of the agreement, the State recommended that the trial court sentence the Defendant as a Range I standard offender. Thus, the sentencing range for the two aggravated burglary convictions would be between three and six years, and the range for the two theft convictions would be between two and four years. At the sentencing hearing, the State notified the trial court that it would not seek consecutive sentencing. The State then proceeded with its proof.

Robert Nick testified at the sentencing hearing that he and his wife went on vacation July 1-7, 2010. Upon returning home, he observed that the garage door was open, a car was missing, doors had visible signs of forced entry, and the house was in total disarray. After a brief inventory, he realized that he also was missing a digital camera, watches, seven guns, and certain jewelry belonging to his wife. His total amount of losses and damages was approximately $2,800. Although Nick had received some restitution from other defendants, approximately $1,300 remained unreimbursed at the time of the hearing. Since the break-in, Nick had installed a security system in his home and kept a gun with him while sleeping.

Detective James Colvin, Brentwood Police Department, testified that he reported to the scene of the burglary at the Nick residence. He noticed in the garage a shelving unit that had been hit such that its contents were strewn across the floor. The frame of the garage also was damaged where the perpetrators apparently had scraped the side in an attempt to flee with the vehicle.

As part of his investigation, Detective Colvin ran a check on the license plate of the stolen vehicle. When police found the vehicle, it was occupied by four juveniles. Detective Colvin interviewed the juveniles. During the course of those interviews, he learned about the Defendant's involvement in the burglary.

Detective Colvin then interviewed the Defendant.[1] In that interview, the Defendant explained that there was not simply one but two break-ins. On the first occasion, the Defendant and his accomplices entered the home and retrieved the weapons from the gun safe. A few days later, the Defendant drove the juveniles back to the Nick residence to steal the vehicle in the garage. During the course of Detective Colvin's interviews with the Defendant and his accomplices, he also learned that the Defendant's mother and stepfather

---

[1] The Defendant was eighteen years old when he broke into the Nick residence.

confiscated the guns from the boys and dumped them in Percy Priest Lake. A search of the lake produced two of Nick's guns.

Detective Colvin gleaned from the interviews that the boys wanted a car to take to parties for the Fourth of July, so they stole Nick's vehicle. As far as their reason for choosing the Nick residence, they indicated that it was by checking mailboxes. Detective Colvin stated that the suspects would

> check a mailbox and if there's mail stacked up in the mailbox, . . . it appears that no one is checking the mail, possibly nobody is home. They then ring the doorbell and knock on the front door. If no one answers, they go around and do the same for the rear door and then kick it.

The Defendant was familiar with the Brentwood area because his mother cleaned houses there. Detective Colvin also stated that this particular area of Brentwood recently had experienced a marked increase in burglaries.

The defense then proceeded with its proof. Gerald Finney testified that he works for Finney Social Services, which contracts with the Davidson County Department of Children's Services. Through his employment, he met the Defendant when the Defendant and the Defendant's brother completed an outpatient alcohol and drug treatment program. Finney believed that the Defendant was receptive to and successful in the program, and Finney and his wife still maintained contact with the Defendant's family. Finny perceived that the Defendant and the Defendant's brother were both remorseful for their actions. The trial court asked Finney about the Defendant's brother, and Finney confirmed that the Defendant's brother was one of the juveniles involved in the break-ins at the Nick residence. When asked about the Defendant's drug use, he acknowledged that the Defendant had used marijuana at least from the age of twelve until the time of his arrest for the charges in this case. Because of the events surrounding the commission of these crimes, the Defendant's stepfather had been deported to Mexico. Consequently, the Defendant's mother had gone to Mexico and was there at the time of trial in order to visit the Defendant's stepfather. The trial court asked Finney if he had any knowledge about the Defendant's grandmother being ill.[2] Finney

---

[2] On November 14, 2011, the day before the sentencing hearing, the Defendant filed a motion to continue the sentencing hearing. As his basis, he stated, "defendant would show that he intended to call his mother at his sentencing hearing to testify on his behalf. Due to the grandmother's illness, defendant's mother returned to Mexico and has not yet returned." The trial court and defense counsel agreed that the sentencing hearing would proceed as scheduled on November 15, 2011. If defense counsel still desired to call the Defendant's mother at the conclusion of all the proof, the trial court would suspend proceedings until the Defendant's mother returned. However, at the close of the defense's proof, defense counsel told the trial

(continued...)

replied that he did not and said, "I heard . . . that . . . [the stepfather] was going to be deported there, and if he couldn't come back, [the Defendant's] mom wanted to go visit him."

The Defendant began his testimony by apologizing to Nick for what he did. He then stated that his mother had been in Mexico for the past two-and-a-half months because of his grandmother being sick. Although his mother planned to return in order to testify at the sentencing hearing, a problem with her passport kept her in Mexico. Because of his mother being gone, the Defendant was responsible for ensuring his younger siblings attended school and providing for them. He clarified, however, that his only financial responsibility was paying for his own cell phone bill. He admitted that his driver's license had been revoked because of outstanding tickets. Although he claimed that he had been employed for the past three weeks working between forty and fifty hours per week at nine dollars per hour, he could not remember the name of his employer.

On cross-examination, the State asked the Defendant why he first entered the Nick residence. The Defendant answered that it was a combination of peer pressure and wanting extra money. He admitted that he was the only individual who was not a minor at the time of the break-in. He also stated that he "trashed" Nick's residence because he and his accomplices were looking for more valuables. The Defendant agreed that he was involved in removing the guns from the Nick residence, and he admitted to keeping two or three of the guns until his mother disposed of them in the lake.

He stated that after he was bonded out of jail, the State gave him a plea offer of four years. However, he did not like the offer and posted the following on his social networking web page: "4 years to do judge? betta suck on dis nuts set dat b***h for trial! lol." Defense counsel objected to this web page's admission as irrelevant, but the trial court overruled the objection. The Defendant also admitted to receiving a citation for contributing to the delinquency of a minor, but he explained that it was because he let someone drive his car who he thought had a valid driver's license. Before his current employment, the Defendant was fired from Wal-Mart. He stated that the computer system that posted his schedules did so incorrectly such that he was misinformed about his work schedule. Accordingly, Wal-Mart fired him for not reporting to work. During the months between his employment at Wal-Mart and his current employment, he acknowledged that he was unemployed and that he made no effort during that time to complete his General Education Development ("GED") credential.

---

[2](...continued)
court that the defense no longer felt it necessary to call the Defendant's mother as a witness.

At the end of closing arguments, defense counsel requested judicial diversion from the trial court. The trial court found that based on the Defendant's failure to work toward the completion of his GED, his work history, and "generally, just an attitude of not being one who can follow the rules," the factor of amenability to correction pointed toward denial of diversion. Additionally, the trial court found that, whereas most diversion cases are marked by instances in which a defendant does something unplanned and uncharacteristic of his or her nature, the Defendant's actions in this case were well-planned, as shown through the methodology of checking the mailboxes. Although the Defendant had no prior felonies, the trial court found him to have a poor social history. As for the Defendant's mental and physical health, the trial court found that factor to be neutral based on a lack of testimony or evidence. The trial court also found the deterrence factor to weigh against diversion based on the involvement of several juveniles in this case and the necessity for them to understand the gravity of the offense. Finally, the trial court found that judicial diversion would not serve the interests of the public. Accordingly, the trial court denied diversion.

The trial court found the Defendant to be a standard Range I offender, establishing the Defendant's range at three to six years for the burglaries and two to four years for the thefts. Looking at potential enhancing factors, the trial court found applicable the factor assessing the Defendant's history of criminal behavior. Although he had no convictions on his record, the trial court found that the Defendant had engaged in criminal behavior through his illegal drug use and by driving with an invalid license. The trial court also found applicable that the Defendant, as the only individual involved who had reached the age of majority, acted as a leader in the commission of the offense. The trial court placed great weight on this factor and noted particularly that the Defendant's younger brother was one of the juveniles engaged in the criminal activity. Additionally, the trial court found that on the first day of the offense the Defendant acquired a deadly weapon, satisfying another enhancing factor.

Turning to possible mitigating factors, the trial court found disingenuous the Defendant's argument that he checked the mailboxes to avoid human contact out of regard for human life. To the contrary, the trial court found merit in believing that the Defendant committed these crimes with utter disregard to the value of human life. With regard to other mitigating factors, the trial court considered the fact that the Defendant was young, and applied that finding as the sole applicable mitigating factor. Based upon the consideration of all of these relevant factors, the trial court sentenced the Defendant to five and a half years for each burglary conviction and three and a half years for each theft conviction. The State notified the trial court at the sentencing hearing that it would not seek consecutive sentencing. Therefore, the trial court ordered that all the sentences run concurrently for an effective sentence of five and a half years.

Regarding the method of service of the sentences, the trial court found that confinement was necessary in this case to avoid depreciating the seriousness of the offenses, given the Defendant's "cavalier attitude" and his destruction of the Nick residence. In addition, the trial court found confinement to be necessary as a deterrent to others based on the Defendant being a leader in a group of juveniles as well as the testimony by Detective Colvin that the area had experienced an increase in burglaries. Finally, besides the Defendant's assertion that he currently was not using illegal drugs, the trial court found the Defendant to be a "dishonest person."

Accordingly, the trial court ordered that his sentence be served in confinement. The Defendant timely appeals, raising five issues. First, he argues that the trial court should not have admitted the Defendant's social networking web page. Second, he contends that the trial court erred in denying judicial diversion. Third, the Defendant also asserts that the trial court erred in its application of enhancing and mitigating factors at sentencing. Fourth, he claims that the trial court erred in its credibility finding regarding the Defendant's testimony. Fifth, the Defendant argues that the trial court should have granted the Defendant probation rather than order that he serve his sentence in confinement.

Analysis

*Admission of Social Networking Web Page*

The Defendant contends that the trial court erred in admitting as evidence at the sentencing hearing the Defendant's social networking web page. Shortly after his release on bond, the Defendant posted a comment to his social networking site that read, "4 years to do judge? betta suck on dis nuts set dat b***h for trial! lol."

At the hearing, defense counsel objected to the web page's admission, arguing that its contents were irrelevant. Although he provides no legal authority on appeal, the Defendant asserts, "This posting was months prior to his sentencing, and although it obviously angered the judge, . . . [it wa]s not relevant to a proper sentence."

Generally, we review issues regarding the admissibility of evidence under an abuse of discretion standard. State v. Looper, 118 S.W.3d 386, 422-23 (Tenn. Crim. App. 2003) (quoting State v. James, 81 S.W.3d 751, 760 (Tenn. 2002)). Thus, the trial court's decision on the issue of relevancy will remain intact unless the reviewing court determines that the trial court abused its discretion. State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008). The only situations in which reviewing courts in Tennessee will find an abuse of discretion are "when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that

causes an injustice to the complaining party." Banks, 271 S.W.3d at 116 (citing Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth., 249 S.W.3d 346, 358 (Tenn. 2008)); see also Looper, 118 S.W.3d at 422.

Tennessee Rule of Evidence 401 prescribes the threshold determination regarding the admissibility of evidence. Initially, the trial court must decide whether the particular evidence is relevant. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Put another way, "evidence is relevant if it helps the trier of fact resolve an issue of fact." State v. James, 81 S.W.3d 751, 757 (Tenn. 2002) (quoting Neil. P. Cohen, et al., Tennessee Law of Evidence § 4.01[4], at 4-8 (4th ed. 2000)).

The trial court, in determining whether to grant the Defendant probation, considered several factors including "amenability to correction." This factor encompasses a Defendant's "general attitude, including behavior since arrest." State v. Blackhurst, 70 S.W.3d 88, 97 (Tenn. Crim. App. 2001) (citing State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995)). Although the trial court did not state that it relied on the contents of the Defendant's social networking page in any of its determinations, the comment posted by the Defendant is indicative of an attitude of disrespect toward authority and a lack of remorse for his actions. Thus, the web page was relevant to the trial court's sentencing determination.[3] Accordingly, the Defendant is not entitled to relief on this issue.

*Judicial Diversion*

The Defendant asserts that the trial court erred in denying the Defendant judicial diversion. Pursuant to Tennessee Code Annotated section 40-35-313, a trial court "may, at its discretion, following a determination of guilt, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt." State v. Robinson, 328 S.W.3d 513, 519 (Tenn. Crim. App. 2010) (citing Tenn. Code Ann. § 40-35-313(a)(1)(A) (2006)). We review the trial court's decision to grant or deny judicial diversion under an abuse of discretion standard. Id. (citing State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997)). Thus, the trial court's decision will remain intact so long as the decision is supported by substantial evidence in the record. Id. (citing Cutshaw, 967 S.W.2d at 344); State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)).

---

[3] The Defendant did not object to the document based on hearsay grounds.

According to Tennessee Code Annotated section 40-35-313, a "qualified defendant" for purposes of judicial diversion is one who:

> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119, or a Class A or Class B felony; and
>
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i)(a)-(c) (Supp. 2007).

In determining the appropriateness of judicial diversion, the trial court shall consider the following factors: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; . . . (6) the deterrence value to the defendant and others," Robinson, 328 S.W.2d at 520 (citing Parker, 932 S.W.2d at 958; Cutshaw, 967 S.W.2d at 343-44); and (7) "whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as of the defendant." State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).

The Defendant satisfies the requirements of Tennessee Code Annotated section 40-35-313(a)(1)(B)(i) in that he entered an open plea for the four charged offenses, all of which satisfy the parameters of section 40-35-313(a)(1)(B)(i)(b). Additionally, he previously had not been convicted of a felony or Class A misdemeanor.

Thus, we must decide whether the trial court abused its discretion in its application of the factors that resulted in its determination that judicial diversion was inappropriate for the Defendant. The trial court found that the first factor, amenability to correction, weighed against judicial diversion. The trial court relied on the Defendant's failure to work toward the completion of his GED, his work history, and "an attitude of not being one who can follow the rules." In assessing the circumstances of the offense, the second factor, the trial court noted that most diversion cases characteristically involve instances in which a defendant does something unplanned and out of the ordinary for his or her nature. The trial court found, however, that in this case the Defendant's actions were well-planned, as evidenced by the methodology of checking the mailboxes. The trial court found that the Defendant did not have a criminal record, which weighed in favor of judicial diversion.

However, the trial court found that the Defendant had a poor social history. As reliance, the court stated:

> What I have before this Court is someone that, according to the presentence report, dropped out of high school in the ninth grade and has made efforts that are minimal at best to obtain his GED. He's not been able to hold a steady job for any significant period of time.

Regarding the factor assessing the Defendant's physical and mental health, the trial court found that there was no testimony given regarding this factor and, accordingly, found it to be neutral. On the other hand, the trial court found that the deterrence value of the offense weighed heavily against granting judicial diversion. The court noted that the Defendant was the sole adult committing the offenses with a group of juveniles and that all individuals involved needed to understand the gravity of those offenses. Finally, the trial court determined that nothing in the record supported a finding that expunging the Defendant's record from these offenses would in any way serve the interests of the public. After balancing these factors, the trial court found that judicial diversion was not appropriate for this case.

Upon review, we conclude that substantial evidence in the record supports the trial court's decision to deny judicial diversion. The Defendant testified that he was unemployed for several months between his employment at Wal-Mart and his employment at the time of the hearing. Moreover, he could not recall the name of his current employer. During his period of unemployment, he made no effort to complete his GED. Although he offered an excuse for his termination at Wal-Mart, he admitted that the reason for his termination was failure to report to work. The record establishes that the Defendant was familiar with the neighborhood because his mother cleaned houses there. Additionally, the boys decided they needed a car to take to some parties, and they chose to return to burglarize the Nick residence for a second time in order to steal a vehicle. This, of course, was in addition to first casing the Nick home by checking the mailbox. Finally, the Defendant testified that he was eighteen at the time of the offense, and out of all the accomplices, he was the only individual who was not a juvenile. Based upon this evidence, the record supports the trial court's decision. Therefore, we conclude that the trial court did not abuse its discretion. Accordingly, the Defendant is entitled to no relief on the basis of this claim.

*Application of Enhancement and Mitigating Factors*

The Defendant's next contention is that the trial court improperly applied the statutory enhancement and mitigating factors in determining the Defendant's sentence. When a defendant challenges the length, range, or manner of service of a sentence, the applicable

standard of review is de novo on the record with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2006). However, this presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court did not do so, then the presumption fails, and this Court's review is de novo with no presumption of correctness. State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004). If the trial court considered the statutory criteria, imposed a lawful but not excessive sentence, stated its reasons for the sentence on the record, and its findings are supported by the record, then this Court is bound by the trial court's decision. State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). On appeal, the party challenging the sentence has the burden of demonstrating that it is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Carter, 254 S.W.3d at 344.

In this case, the record demonstrates that the trial court carefully and thoroughly considered the sentencing principles and all relevant facts and circumstances. Therefore, in our review of the Defendant's sentence, we will apply a presumption of correctness.

In conducting an appellate review of a sentence, we must consider the following: (a) any evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments of counsel regarding sentencing alternatives; (d) the nature and characteristics of the criminal conduct; (e) any enhancement or mitigating factors as provided in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement made by the defendant on his or her own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b) (2006); see also Carter, 254 S.W.3d at 343.

In imposing a sentence within the appropriate range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210. From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343 (quoting Tenn. Code Ann. § 40-35-210(d)).

Of relevance to this case, the trial court considered the following factors to enhance the Defendant's sentence:

> (1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
>
> (2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors; [and]
>
> . . . .
>
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense[.]

Tenn. Code Ann. § 40-35-114 (2010). In order to apply, enhancement factors always must be "appropriate for the offense" and "not already an essential element of the offense." Id.

Also relevant to this case, possibly to mitigate the sentence, the trial court considered that "[t]he defendant, because of youth or old age, lacked substantial judgment in committing the offense." Tenn. Code Ann. § 40-35-113 (2010).

In its application of the statutory enhancement and mitigating factors, the trial court found that the Defendant's criminal history satisfied the first enhancement factor. Although he had no prior convictions, the trial court found that the Defendant had engaged in criminal behavior through his admitted drug use and driving with an invalid license. Additionally, the trial court found applicable that the Defendant, as the only adult among juveniles, acted as a leader in the commission of the offense, satisfying the second factor. The trial court placed great weight on this factor and particularly emphasized the fact that the Defendant's brother was one of the juveniles associated with the criminal activity. Finally, the trial court found that on at least the first break-in the Defendant acquired and possessed a deadly weapon when he broke into Nick's gun cabinet and stole the guns contained there. As the sole mitigating factor, the trial court applied the factor of age, noting that the Defendant was young.

The record supports the trial court's findings. As established by the record, the Defendant had several traffic violations and had used marijuana from at least the age of twelve until the time of his arrest for these offenses. The Defendant was eighteen when he committed the offenses underlying his convictions. Conversely, all of his accomplices were juveniles, including his younger brother.

The record also establishes that the boys stole seven guns from Nick's gun cabinet, and the Defendant acknowledged that he was involved in removing the guns from the Nick residence. While this factor presents a close question, the evidence does appear to support a finding that the Defendant possessed a firearm during at least a portion of the first burglary. We also conclude that even if the trial court erred in applying this factor, the record still supports the sentence imposed by the trial court.

Accordingly, because the trial court considered the statutory criteria, imposed a lawful but not excessive sentence, stated its reasons for the sentence on the record, and its findings are supported by the record, we are bound by the trial court's decision. Carter, 254 S.W.3d at 346. Consequently, the Defendant is not entitled to relief on this issue.

*Credibility of Defendant and Denial of Probation*

Finally, the Defendant argues that the trial court erred in finding the Defendant's testimony untruthful and in denying the Defendant probation . When a court determines the manner of service of a sentence, it is no longer presumed that a defendant is a favorable candidate for alternative sentencing under the revised Tennessee sentencing statutes. Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Rather, the advisory sentencing guidelines now provide that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann § 40-35-102(5)-(6)(A) (Supp. 2007). Additionally, a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. Id. § 40-35-102(6)(D).

In determining whether to impose a sentence of confinement, the trial court should consider the following:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2006); see also Carter, 254 S.W.3d at 347.  Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed.  Tenn. Code Ann. § 40-35-103(2), (4).  A trial court should also consider a defendant's potential for rehabilitation or lack thereof when determining the manner or length of the sentence.  Tenn. Code Ann. § 40-35-103(5).

We first address the Defendant's argument that the trial court improperly assessed the Defendant's credibility.  In assessing the appropriateness of probation for the Defendant, the trial court found the Defendant generally to be "a dishonest person."  The Defendant asserts that his testimony was "uncontroverted," and, thus, the trial court should have considered it credible.  We yield to the trial court's finding, as "[t]he trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation." State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).  Moreover, the State successfully attacked the Defendant's credibility by questioning the Defendant about his traffic infractions and his disrespect for the Nick residence and the court system.  Additionally, the State highlighted the inconsistency in the Defendant's reason for why his mother was in Mexico.  Furthermore, the Defendant could not remember the name of his current employer.  Thus, we will not disturb the trial court's finding on this issue.

Regarding the manner of the Defendant's sentence, the trial court found that the Defendant's "cavalier attitude" and the manner in which he destroyed the Nick residence pointed toward confinement in order to avoid depreciating the seriousness of the offense. Additionally, the trial court found that the Defendant was a leader among a group of juveniles, and the area where the Nicks lived had seen an increase in burglaries.  Such findings, the court determined, pointed toward confinement in order to serve as a deterrent to others.

The record supports the trial court's findings.  The Defendant's explanation for leaving the residence in such disarray was the group's desire to acquire more valuables.  He made numerous excuses at the hearing as to why he had been fired in the past or why he had received multiple citations.  As stated previously, the record indicates that the Defendant was the only individual involved in the offense who was not a juvenile.  Moreover, his younger

brother accompanied him in the commission of the offense. Finally, Detective Colvin testified that this particular area of Brentwood had experienced a notable increase in the instances of burglaries. Thus, we will not disturb the trial court's denial of alternative sentencing. Therefore, the Defendant is entitled to no relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JEFFREY S. BIVINS, JUDGE